UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DEBRA DINSMORE,

         Plaintiff,

v.

COVENANT HEALTHCARE and
KATHY BUCHANON,

         Defendants.
_____/

Case Number 10-13451-BC
Honorable Thomas L. Ludington

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DISMISSING PLAINTIFF'S FEDERAL CLAIM WITH PREJUDICE, AND DECLINING JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIM

Plaintiff Debra Dinsmore filed a complaint against her former employer, Covenant Healthcare, and her former supervisor, Kathy Buchanon, on August 28, 2010, alleging that Defendants terminated her employment in retaliation for exercising her rights under the Employee Retirement Income Security Act ("ERISA") and breach of a satisfaction contract. Plaintiff had worked at Covenant as an R.N. for over twenty-five years. Plaintiff worked in the preoperative care and postoperative care ("POHA/PACU") unit in the Department of Surgical Services. At the times material to Plaintiff's claims, Jon Gennain was Director of Surgical Services and Defendant Kathy Buchanon was Manager of Surgical Services. Plaintiff also reported to a Coordinator supervised by Buchanon.

After Buchanon began her tenure as Manager, Plaintiff contends that she, along with several other nurses, reported illegal and fraudulent activities Buchanon demanded of the nurses under her supervision. Plaintiff alleges that subsequent to her filing complaints with Covenant's Compliance Department, Buchanon became "hateful and very spiteful." ECF No. 15 Ex. 1 at 18. Several nurses retired soon thereafter, one transferred to a different department, and Plaintiff began looking for

employment elsewhere. Counsel for Defendants contend that Covenant has no record of a complaint made against Buchanon. Counsel for Plaintiff clarified that Plaintiff had made her complaint through a hotline sometime in the year before she went on "occasional status."

In June 2007, the Plaintiff resigned her full-time position at Covenant in order to accept a new full-time position at the Anderson Eye clinic. At the time Plaintiff resigned her full-time status, Buchanon approved her for an "occasional status" position which required her to work on an intermittent scheduled or unscheduled basis. Plaintiff alleges that she took the occasional status position in order to remain an "employee" so that she could complete her qualification for the retiree health plan. The retiree health plan was available only to employees who "retired" from Covenant, which specifically meant that they must be receiving a retirement benefit under Covenant's retiree health plan.

Covenant's Policy Number 602 governs the classification of "occasional status." The policy provides in pertinent part:

> Employees in budgeted positions of less than 30 hours per pay period and work on an as-needed basis, per departmental policy. Occasional employees' manager may terminate employees who are unable to fulfill occasional requirements as defined by departmental guidelines.

ECF No. 15 Ex. 2. Plaintiff contends she was also told by the Coordinator of the department that the departmental guidelines required that she "pick up two days a month that was okayed by the coordinator." ECF No. 15 Ex. 1 at 23. Plaintiff was concerned about maintaining her required FTE [full-time equivalent] until retirement so that she would be eligible to receive her $39,000.00 medical benefit. ECF No. 15 Ex. 1 at 18-19. Plaintiff's occasional position had the equivalent of .1 FTE. A FTE "is the total requirement for you to benefit from the medical monies that were offered." *Id.* at 63. Plaintiff "had to hold a[] FTE until [her] retirement age to have the $39,000 of [her]

medical benefits that would apply. . . . Th[e] FTE was mandatory." *Id.* at 63.

Plaintiff initially worked an acceptable number of hours in her department. In early May 2008, physicians diagnosed Plaintiff's mother with recurrent breast cancer and two days later her father suffered a stroke. Plaintiff received a letter on May 15, 2008, from Buchanon explaining the requirement that the "occasional RN needs to work at least an average of 8 hours every two weeks." ECF No. 15 Ex. 4. Buchanon's letter also requested Plaintiff's feedback and sought her "intentions related to the 8-hour shift per pay period requirement." *Id.* Buchanon subsequently sent Plaintiff letters requesting her assistance in working certain shifts to fulfill the needs of the department because other full-time employees were scheduled for Family and Medical Leave Act-qualifying leave during the summer. On June 11, 2008, Buchanon sent Plaintiff another letter, reiterating the needs of the department and stating that if Plaintiff did not believe she could fulfill the needs of that position, she could be released from the position in order to try to locate another occasional position within Covenant Healthcare. Defendants contend that Plaintiff either declined the shifts, or would accept them and then shortly before she was scheduled to work would call in, advising her department that she was not available. Plaintiff contends that Buchanon began demanding that Plaintiff pick up additional shifts beyond the occasional status minimum, which included telling her to cancel a non-elected surgery. Because of her occasional status, Plaintiff was not eligible for medical leave under the FMLA, but she contends that she was advised that she had five sick days available which she used for the days she was scheduled to work in August following her surgery on July 23, 2008.

On August 28, 2008, Covenant terminated Plaintiff's employment as an occasional employee with the POHA/PACU department for not meeting the time requirements for the position. The letter

alleged that Plaintiff was unavailable to work during the month of August, listed the three days Plaintiff had called in sick, and incorrectly included August 26 instead of September 26 as the date Plaintiff was scheduled to take a certification class. Plaintiff was given thirty days to enable her to seek another occasional position at Covenant, which would have allowed her to continue to be an "employee" and potentially eligible for retiree healthcare benefits in the future. Following the August 28, 2008, letter from Buchanon, Plaintiff began to speak with some of the other managers at Covenant to find an occasional position. Although some of those individuals told her they would let her pick up extra days, they couldn't give her a FTE position. *Id.* After Plaintiff's attempts to informally locate an alternative position with a FTE, Plaintiff searched the internal computer system for a position but was unable to find any occasional FTE's available for a RN. *Id.* at 65.  Although Plaintiff was not terminated until January, 2009, the last day that she worked a shift at Covenant Healthcare was during the June 13, 2008 pay period.

Following the notice of termination, Plaintiff also utilized Covenant's alternative dispute resolution process. Plaintiff's termination then was delayed until December 31, 2008 to give her a chance to find another occasional status position and subsequently delayed until January 16, 2009. Plaintiff did not apply for a new position until January 9, 2009, but was not invited to interview for that position. Plaintiff believes that Buchanon may have "poisoned the well" by providing negative feedback to other department supervisors. Plaintiff's employment at Covenant was ultimately terminated on January 16, 2009.

Plaintiff subsequently filed her complaint alleging retaliation under ERISA and breach of a satisfaction contract. Defendants now move for summary judgment on Plaintiff's claims, contending that Plaintiff was not employed under a "satisfaction contract" and has not established

that her termination was for the purpose of interfering with her attainment of an ERISA-protected right.

A hearing on Defendants' motion was held on October 18, 2011. For the reasons provided herein, Defendants' motion for summary judgment will be granted.

# I

A motion for summary judgment should be granted if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be proven or is genuinely disputed must support the assertion by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). The party seeking summary judgment has the initial burden of informing the Court of the basis for its motion, and identifying where to look in the record for relevant facts "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. Pro. 56(e)(2); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If the opposing party fails to raise genuine issues of fact and the record indicates the moving party is entitled to judgment as a matter of law, the court shall grant summary judgment. *Anderson*, 477 U.S. at 250.

The court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The party opposing the motion may not "rely on the hope that the

trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## II

It is clear that if an employer terminates an employee in order to prevent pension or other ERISA benefits from vesting, it would be actionable under ERISA. *Ingersoll-Rand Co. v. Perry McClendon*, 498 U.S. 133, 143 (1990). 29 U.S.C. § 1140 provides, in relevant part: "it shall be unlawful for any person to discharge, fine, suspend, expel, discipline or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . ." When applying this statute, most courts have held that it is appropriate to employ a *Burdine*, burden-shifting approach if there is no direct evidence of the employer's motivation. *Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1043 (6th Cir. 1992). To avoid summary judgment on a Section 1140 claim, a plaintiff must show the existence of a genuine issue of material fact that there was (1) prohibited employer conduct; (2) taken for the purpose of interfering; (3) with the attainment of any right to which the employee may become entitled. *Id.* In order to show that she was discharged in violation of Section 1140, a plaintiff "must show that an employer had a specific intent to violate ERISA." *Rush v. United Technologies, Otis Elevator Div.*, 930 F.2d 453, 457 (6th Cir. 1991). Where the only evidence that an employer specifically intended to violate ERISA is the employee's lost opportunity to accrue additional benefits, the employee has not put forth evidence sufficient to separate that intent from the myriad

of other possible reasons for which an employer might have discharged him. *Id*. Rather, the plaintiff must adduce facts which, if taken as true, could enable a jury to identify unlawful intent from other various reasons why the employer might have terminated plaintiff, and to conclude that the employer harbored requisite unlawful intent. *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 239 (4th Cir. 1991).

If the plaintiff is able to establish a prima facie case, the employer's burden is to introduce admissible evidence of a legitimate non-discriminatory reason for its challenged action. *Gavalik v. Cont'l Can Co.*, 812 F.2d 834, 853 (3d Cir. 1987). If the employer successfully asserts a legitimate reason for its actions, then the presumption of wrongful action drops from the case and the plaintiff must either prove that the interference with pension benefits was a motivating factor in the employer's actions or prove that the employer's proffered reason is unworthy of credence. *Humphreys*, 966 F.3d at 1043 (internal citations omitted).

As evidence of a prima facie case of retaliation, Plaintiff offers her history with Buchanon and the complaints Plaintiff made alleging Buchanon engaged in illegal and fraudulent conduct before Buchanon approved Plaintiff for occasional status. Plaintiff contends that harassment followed these complaints, resulting in several nurses who made complaints leaving the department and Plaintiff moving to occasional status. In conjunction with this, Plaintiff contends that she "made no secret about her desire to stay on with [] Covenant in the occasional position until she had reached the age when she would become eligible to receive the $39,000 in retirement healthcare benefits." Pl's Resp. to Def.'s Mot. for Summ. J. 9. Plaintiff contends that the fact that Buchanon knew of her interest in the benefit and knew that Plaintiff would lose the benefit if she lost her occasional status position that carried a FTE, is circumstantial evidence of Defendants purposefully

interfering with her attainment of an ERISA benefit.

Plaintiff argues that in addition to her complaints against Bannon, Covenant had a motive to interfere with the attainment of her medical benefit because it was a significant sum of money. Plaintiff contends that an unidentified woman from the human resources department told Plaintiff if she received a warning letter regarding her occasional status with FTE, it was most likely because Covenant was "after [her] position." Pl's Resp. to Def.s' Mot. for Summ. J. 11. Plaintiff also had the impression that Covenant was eliminating occasional positions with a FTE, but she does not explain why she was given this impression. Plaintiff contends that this evidence is sufficient to allow a jury to conclude that Defendants acted with intent to interfere with her ERISA benefit.

Plaintiff's subjective suspicions and the fact that Covenant would be the payor of her medical benefit are insufficient to establish a prima facie case of purposeful interference with Plaintiff's attainment of a medical benefit. That Buchanon knew Plaintiff desired to keep her occasional status position in order to remain eligible for her ERISA benefit, standing alone, is insufficient to establish that Defendants purposefully interfered with her attainment of an ERISA benefit. Moreover, the complaints allegedly made against Buchanon and the general negative impact Plaintiff alleges that the complaints had on their working relationship pre-date Plaintiff's transfer to occasional status and Plaintiff has not established a causal connection between making these complaints and Defendants purposefully interfering with her attainment of an ERISA benefit.

However, Plaintiff also offers Buchanon's actions during the summer of 2008 as evidence of a prima facie case of retaliation: asking Plaintiff to cancel a necessary surgery, demanding that Plaintiff take a shift at work while her mother was dealing with recurrent breast cancer and her father suffering a stroke despite the fact that Covenant was experiencing low census numbers and other

employees were complaining about not receiving enough shifts, and Buchanon requesting that Plaintiff post her position for others to apply if Plaintiff could not meet the requirements. Plaintiff contends that the days she missed were covered by "sick time" that an individual in the human resources department, who Plaintiff identified at the hearing as Mr. Van Arsdale, advised she had available. Plaintiff also believes that she was unable to secure another occasional position because Buchanon "poisoned the well" to prevent her from maintaining her benefit but has no corroborating evidence to support her belief.

Plaintiff, however, does not offer any evidence suggesting that Buchanon's actions in the summer of 2008 were taken for the purpose of interfering with any ERISA benefit. ERISA does not guarantee every employee a job until he or she has fully vested into a company's benefit plan. *Conkwright v. Westinghouse*, 933 F.2d at 238. Plaintiff is required to prove more than the fact that her termination precluded her from vesting and must demonstrate unlawful purpose in the termination. *Dister v. Continental*, 859 F.2d 1108, 1111 (2d Cir. 1988). Plaintiff admits she was not willing to work some of the shifts which were offered to her and which she initially accepted, that she was given an opportunity early in the summer of 2008 to apply for an alternative position in Covenant to maintain her FTE, and that she admits that following her termination in August of 2008, she was then given another five months in which to apply. Plaintiff has not provided circumstantial evidence to establish a prima facie case because she has not demonstrated that Defendants' actions were for the purpose of interfering with her ERISA benefit and Defendants' motion for summary judgment will be granted.

### III

Defendants' motion also challenges Plaintiff's breach of satisfaction contract claim under

Michigan law. However, because Defendants are entitled to summary judgment on Plaintiff's ERISA benefit interference claim, the Court will decline to exercise jurisdiction over Plaintiff's state law claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Washington v. Starke*, 855 F.2d 346, 351 (6th Cir. 1988) ("It is a clear rule of this circuit that if a plaintiff has not stated a federal claim, his pendant state law claims should be dismissed.").

## IV

Accordingly, it is **ORDERED** that Defendants' motion for summary judgment (ECF No. 13) is **GRANTED**.

It is further **ORDERED** that Plaintiff's ERISA benefit interference claim is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that jurisdiction is **DECLINED** over Plaintiff's state law claim.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: November 14, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 14, 2011

s/Tracy A. Jacobs
TRACY A. JACOBS

---